IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SHONA LEE M.,[1] | Case No. 6:22-cv-01312-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Shona Lee M. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Social Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on fibromyalgia, attention deficit hyperactivity disorder ("ADHD"), oppositional defiance disorder, carpal tunnel syndrome, tarsal tunnel syndrome, and

arches in her feet. Tr. 35.² At the time of her alleged onset date, she was 48 years old. *Id.* She has completed high school. Tr. 23. She has no past relevant work. *Id.*

Plaintiff protectively applied for SSI on April 11, 2019, alleging an amended onset date of March 19, 2019. Tr. 150, 597. Her application was denied initially on August 15, 2019, and on reconsideration on June 11, 2020. Tr. 66-69, 74-76. Plaintiff subsequently requested a hearing, which was held on May 3, 2021, before Administrative Law Judge ("ALJ") John Sullivan. Tr. 592. Plaintiff appeared and testified at the hearing, represented by counsel Tr. 598-609. A vocational expert ("VE"), Franklin Corbin, also testified. Tr. 610-615. On May 28, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 24. Plaintiff requested Appeals Council review, which was denied on June 30, 2022. Tr. 1-6. Plaintiff then sought review before this Court.³

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

² Citations to "Tr." are to the Administrative Record. (ECF 12).

³ The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6)

PAGE 3 – OPINION AND ORDER

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.  The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date through the date of the ALJ's decision. Tr. 17.

At step two, the ALJ determined that plaintiff has the following severe impairments: somatic symptom disorder, bilateral carpel tunnel syndrome, degenerative disc disease of the cervical spine, obesity, ADHD, and generalized osteoarthritis. *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ then resolved that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> She can perform tasks involving up to six hours of sitting, and up to six hours of standing/walking in an eight-hour workday (with normal breaks). She can occasionally reach overhead bilaterally. She can frequently reach in all other directions. She can frequently handle or finger bilaterally. She can never crawl or climb ladders, ropes, or scaffolds. She must avoid exposure to workplace hazards, including unprotected heights or moving mechanical parts. She can understand, remember, and carry out no more than simple, routine tasks involving simple work-related decisions (and a reasoning level of two or less). She can tolerate not more than occasional interaction with supervisors, co-workers, or the public. As a result of moderate impairment in concentration, persistence and pace, moderate limitation in understanding, remembering and applying information, as well as difficulty adapting and managing herself, the claimant would be off task up to but not including five percent scattered throughout the workday.

Tr. 19.

At step four, the ALJ found that plaintiff had no past relevant work Tr. 25.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could

perform, including work as a bench assembler, bottle packer, and bottle line attendant. Tr. 23. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ committed four errors: (1) improperly finding plaintiff's hearing loss non-severe at step two; (2) omitting plaintiff's hearing loss impairment when formulating her RFC and posing questions to the VE at step four; (3) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; and (4) failing to provide clear and convincing reasons to reject the lay witness' testimony. Plaintiff's arguments are discussed in turn below.

**I.      Step Two Finding**

Plaintiff contends the ALJ erred at step two by failing to find her hearing loss severe. Pl.'s Opening Br. 8.

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c).

The step two threshold is low; the Ninth Circuit describes it as a "*de minimus* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  As such, any "error at step two [is] harmless [if] step two was decided in [the claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

PAGE 6 – OPINION AND ORDER

Here, the ALJ found that plaintiff had a number of medically determinable and severe impairments at step two. Tr. 17. Concerning plaintiff's hearing loss, the ALJ determined it was not a severe impairment. *Id.* The ALJ acknowledged that plaintiff has experienced hearing loss since childhood, and that it had worsened during the alleged period of disability. Tr. 21 (citing Tr. 306). However, the ALJ ultimately determined that her reduced hearing did "not establish any resulting functional limitations that would significantly affect [plaintiff's] ability to perform basic work activities for a continuous period of at least [twelve] months." Tr. 17. The ALJ then went on to continue the sequential evaluation process and formulated an RFC that considered evidence and allegations pertaining to plaintiff's hearing impairment. Tr. 18-23. Because the ALJ continued with the sequential evaluation process, "[u]nder well-established case law, any alleged error at step two was harmless." *Gary M. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00631-JR, 2023 WL 3276178, at *2 (D. Or. May 5, 2023) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).

## II.   Evaluation of Plaintiff's Hearing Loss

Plaintiff asserts that the ALJ did not include all her impairments when formulating her RFC and posing hypothetical questions to the VE. Pl.'s Opening Br. 8. Specifically, plaintiff asserts that the ALJ should have included the agency physician's recommendation that she should avoid even moderate exposure to noise due to her hearing loss. Pl.'s Opening Br. 13. Plaintiff further contends that the ALJ failing to consider plaintiff's hearing limitations when posing hypothetical questions to the VE was not harmless because each of the three jobs identified at step five require exposure to level four loud noise. Pl.'s Opening Br. 8.

The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In

determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id.* (RFC determination will be affirmed if supported by substantial evidence) (internal citations omitted). An ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

An ALJ's depiction of a claimant's impairments to the VE must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In order to have sufficient evidentiary value, the dispositive hypothetical question posed to the VE must include all of the limitations which are supported by substantial evidence in the record, and which the ALJ has explicitly "accepted," usually as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989). An ALJ's hypothetical questions to the VE need not include limitations which the ALJ has found to be non-credible or accorded diminished evidentiary weight (as to claimant testimony or medical opinion evidence), so long as the ALJ makes specific findings explaining why the limitations were not probative, and therefore omitted. *Stubbs-Danielson*, 539 F.3d at 1174 (citing *Batson Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004).

Plaintiff argues that the ALJ failed to include limitations from Dr. Backlund's and Dr. Wiggins' opinions concerning her hearing loss, without providing legally adequate reasons for doing so. Pl.'s Opening Br. 8. Dr. Backlund, an agency physician, reviewed the record on behalf of the agency and completed plaintiff's physical residual functional capacity assessment. Tr. 43. Dr. Backlund opined that because of plaintiff's mild bilateral hearing loss, she should be limited to working in a moderate noise environment to preserve her hearing. *Id.* Dr. Wiggins, an agency physician, affirmed this finding at the reconsideration level in 2020. Tr. 60-61. He further stated

that plaintiff "is limited to a moderate noise environment to *preserve hearing*." *Id.* (emphasis added).

The ALJ acknowledged that plaintiff has experienced hearing loss since childhood, and that it had worsened during the alleged period of disability. Tr. 21 (citing Tr. 306). However, the ALJ ultimately determined that her reduced hearing did "not establish any resulting functional limitations that would significantly affect [plaintiff's] ability to perform basic work activities for a continuous period of at least [twelve] months." Tr. 17. To support this finding, the ALJ discussed how audiogram testing revealed some hearing loss bilaterally, but plaintiff exhibited no apparent problems with speech and communication. Tr. 21 (citing Tr. 306). The ALJ also stated that plaintiff demonstrated normal speech, and communicated "well" within a clinical setting, and then rejected the state agency's recommended communicative limitations. Tr. 21.

The ALJ's determination that plaintiff's reduced hearing "did not establish any resulting functional limitations" was not supported by substantial evidence. The fact that plaintiff exhibited no apparent problems with speech or communication, *see* Tr. 306, and that her hearing improved with the use of hearing aids, *see* Tr. 509, does not mean that exposure to loud noise and continuing basis is acceptable given her documented hearing loss. To the contrary, Dr. Backlund and Dr. Wiggins concluded that plaintiff should be limited to working in a moderate noise environment to preserve her hearing. Tr. 60-61. There was no evidence in the record that undercut the physicians' conclusions that limited exposure was necessary to preserve plaintiff's hearing. Accordingly, the ALJ's failure to include any hearing limitations in Plaintiff's RFC was not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ may not simply provide his own conclusion; he must also explain why his interpretation of the evidence differs from the doctors); *cf. James R. v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-

PAGE 9 – OPINION AND ORDER

01147-AA, 2020 WL 589532, at *2 (D. Or. Feb. 5, 2020) (ALJ's reasoning for rejecting physician's opinion concerning plaintiff's noise limitations not supported by substantial evidence).

Nor was this error harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if it is "inconsequential to the ultimate nondisability determination."). To the contrary, it meant that the VE's testimony did not constitute substantial evidence to support the disability determination. *See Cooper v. Sullivan*, 880 F.2d 1152, 1158 n. 13 (9th Cir. 1989) (VE's testimony "cannot constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations). The environmental limitations the ALJ posed to the VE did not contain any individualized limitations regarding plaintiff's hearing loss. *Id.* As a result, the VE identified three jobs – bench assembler, bottle packer, and bottle line attendant– with a noise intensity level of 4, which the DOT classifies as "loud" and a step above "moderate," which is level 3. *See* DOT 706.684-022, *available at* 1991 WL 679050; DOT 920.685-026, *available at* 1991 WL 687929; DOT 920.687-042, *available at* 1991 WL 687971. Because the VE's testimony was based on the ALJ's failure to accurately pose all of plaintiff's impairments, the VE's testimony did not constitute substantial evidence that plaintiff could perform those jobs, and the ALJ's error was not harmless.[4]

---

[4] Plaintiff also argues that her RFC precludes her from performing the occupation of bottle packer, because it requires constant reaching and handling, and plaintiff was limited to frequent reaching and handling. Pl's Br. at 13. The Commissioner concedes that "the ALJ did not resolve this conflict as required by Social Security Ruling 00-4p" but asserts that any error is harmless. Def.'s Br. 8. Given this Court's conclusion the ALJ committed harmful error in by failing to accurately include plaintiff's hearing limitations in the RFC, it is unnecessary to resolve whether the ALJ's other error was harmful.

PAGE 10 – OPINION AND ORDER

### IV. Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony that she could not work on a regular basis due to her chronic pain and mental limitations resulting from ADHD and oppositional defiance disorder.

#### A. Legal standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effects of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.     Plaintiff's testimony

Plaintiff reported that she could not work on a regular basis due to her chronic pain and mental limitations resulting from ADHD and oppositional defiance disorder. Tr. 173. She stated that she experiences constant pain and exhaustion, and that she cannot sustain activity for more than 30-45 minutes at a time. Tr. 216. Plaintiff indicated that she often lays down for up to two hours during the day. *Id.* She reported needing to take breaks when performing cleaning or cooking tasks at home. Tr. 49-50. At the hearing, she testified that she experiences chronic pain in her hands that interferes with her manipulative abilities. Tr. 599. For example, she often breaks dishes because she drops them accidently. *Id.* She testified that her chronic pain symptoms interfere with her sleep, leaving her feeling tired during the day. Tr. 600-01.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The parties dispute the ALJ's rationale for discounting her testimony. Specifically, plaintiff takes issue with the ALJ's analysis regarding how her testimony conflicts with the medical evidence and her noncompliance with recommended treatment. Pl.'s Opening Br. 9-11. Plaintiff argues these are not clear and convincing reasons, supported by substantial evidence, for discounting her testimony. *Id.* The Court addresses each rationale in turn.

### C.      Contradictory Medical Evidence

As to the first reason, an ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony regarding her migraines was inconsistent with the objective medical evidence because there was no evidence of any physiological abnormality. Tr. 21. The ALJ cited intracranial imaging from 2019 showing "unremarkable" findings. Tr. 21 (citing Tr. 355). The ALJ acknowledged that although treatment notes from late 2020 demonstrate that plaintiff continued to complain of migraine symptoms, she still presented as alert, fully oriented, conversant, and in no acute distress. Tr. 21 (citing Tr. 587). In addition, the medical record demonstrates that plaintiff's subjective complaints were not consistent with treatment records. Plaintiff testified that she has migraines about once a week. Tr. 600. Plaintiff also testified that these migraines are very severe and last anywhere from twelve to thirty-six hours, and she can't do anything when she has them. *Id.* However, the medical record demonstrates she only complained of migraines on three occasions. Tr. 292, 373, 375, 490, 492.

Accordingly, the ALJ's rejection of plaintiff's testimony concerning her migraines as inconsistent with the medical records was supported by substantial evidence.

As for plaintiff's mental impairments, psychologist Michelle Whitehead, Ph.D., noted that plaintiff had average to above average cognitive abilities with logical and coherent thought processes (Tr. 21-22, citing Tr. 314). The limited mental health treatment notes of record indicated that plaintiff was mildly anxious, but findings were otherwise unremarkable, including good eye contact, a cooperative attitude, intact attention and concentration, and adequate memory (Tr. 22, citing Tr. 375). Such findings undermine plaintiff's allegations that she was unable to work due to mental impairments. Regardless, the ALJ did not entirely reject plaintiff's allegations, but instead limited her to no more than simple, routine tasks, simple work-related decisions, and no more than occasional interaction with others Tr. 19, *see* 20 C.F.R. §§ 416.929(c)(2), 416.945(c). This, the ALJ's treatment of plaintiff's testimony concerning her mental impartments was supported by substantial evidence.

### D.      Lack of Treatment

The ALJ concluded that plaintiff's "compliance with recommended treatment has been sub-optimal." Tr. 22. Plaintiff argues that the record shows that her insurance has denied many of the treatments her doctors recommended for her including physical therapy and referrals to specialists. *Id.* Plaintiff also argues that the ALJ failed to properly consider how plaintiff's mental impairments affect her willingness and ability to pursue treatment. Pl.'s Opening Br. 10.

An ALJ may rely on a claimant's non-compliance with treatment to discount her testimony regarding the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, if a claimant offers a good reason for non-compliance with treatment, then the non-compliance is not a clear and convincing reason to reject her testimony.

*See Smolen*, 80 F.3d at 1285. Non-compliance is excusable when a disabled claimant cannot afford the treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment.").[5]

The ALJ did not err in discrediting plaintiff's subjective symptom testimony due to her noncompliance in attending occupational therapy. Plaintiff rejected multiple forms of treatment including injection therapy, which "she declined due to her dislike of needles." Tr. 270-71, 329. She also declined medication treatment on multiple occasions. In September 2019, she declined all medication except Tylenol to treat her physical impairments. Tr. 334. She declined SSRI's as well. Tr. 269, 328. This lack of compliance supports the ALJ's conclusion that plaintiff's physical impairments are not as debilitating as alleged.

However, the record supports plaintiff's assertion that the cost of treatment prevented her from pursuing physical therapy. Plaintiff frequently reported to medical providers that her insurance would not cover physical therapy, and that it would be too expensive out of pocket. Tr. 263, 270, 329. Plaintiff even expressed great interest in physical therapy. Tr. 355, 359. In January 2020, plaintiff reported that "she is hoping to work with physical therapy to address some component of her neck pain and myofascial pain." Tr. 355. She did attend physical therapy a few times in but then testified that her Oregon Health Plan ("OHP") insurance did not approve

---

[5] Plaintiff correctly notes that the Ninth Circuit disfavors faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance. *See Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("... it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). However, Plaintiff was referred to occupational therapy to improve strength and functioning in her hands, not for issues related to her mental impairments.

<a>
</a>

it. Tr. 366-67, 599.  Thus, the record does not support the finding that plaintiff's lack of compliance with physical therapy was a valid basis for discounting her symptom testimony.

Regardless, because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, the ALJ's reliance on plaintiff's non-compliance with physical therapy treatment is harmless error. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1623 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination). As discussed above, the ALJ properly rejected plaintiff's testimony based on inconsistencies between the medical record and her testimony, and her non-compliance with all other treatments besides physical therapy. Therefore, any error in evaluating plaintiff's subjective symptom testimony is harmless.

### V.      Lay Witness Testimony

Plaintiff next argues that the ALJ failed to consider lay witness testimony regarding her symptoms. Plaintiff asserts that "the ALJ did not mention these statements in the decision and provided no reasoning for discounting them." Pl.'s Opening Br. 12.

Lay testimony concerning a claimant's symptoms on how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ

validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

The ALJ adequately discussed the lay witness testimony. Plaintiff's son and roommate both completed third party function reports describing plaintiff's limitations. Tr. 197-204, 249-56. The lay witnesses stated that plaintiff is incapable of following spoken instructions and getting along with authority figures. Tr. 202, 255. At step three, the ALJ determined that the clinical observations in the record undermine the lay witnesses' testimony that plaintiff is incapable of following spoken instructions and getting along with authority figures. Tr. 22. The ALJ explained that mental health treatment notes indicate that plaintiff "presented as mildly anxious, but that her psychological functioning was otherwise intact." *Id.* The ALJ cited treatment notes where plaintiff demonstrated fair grooming and hygiene, good eye contact, and a cooperative attitude with her treatment provider. *Id.* The ALJ also reasoned that plaintiff's reported history of social dysfunction and deficits in memory and concentration is not consistent with the medical evidence showing she can be cooperative in certain settings and demonstrate sufficient intellectual capacity to successfully complete simple tasks. *Id.* These "reasons germane to each witness" to reject their testimony.

Additionally, the lay witness statements are substantially similar to plaintiff's subjective symptom testimony, which was validly discounted. Therefore, any failure in weighing the lay witness testimony is harmless in this case.

## VI.     Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). As relevant here, the Court may only remand for payment of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard because (1) the RFC failed to account for her hearing limitations; and (2) the ALJ improperly rejected her testimony at that of her two lay witnesses. Pl.'s Reply Br. 7. As discussed above, the Court agrees that the ALJ committed harmful legal error by failing to properly consider plaintiff's hearing loss when formulating her RFC and posing hypothetical questions the VE. However, the record is not fully developed and free from conflicts and ambiguities, and there is a useful purpose in further proceedings.

To begin with, the record does not clearly demonstrate what specific hearing limitations plaintiff should be assessed on remand. Plaintiff asserts that she should be restricted from any jobs that have a moderate noise exposure, per the recommendations of the agency physicians. Pl.'s Reply Br. 7. However, it is for the ALJ to formulate a specific RFC on remand, and ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *See Turner,* 613 F.3d at 1222-23.

Moreover, the record is not fully developed as to what jobs plaintiff can perform given her hearing limitations. The VE was not presented with any hypotheticals concerning plaintiff's hearing limitations. Tr. 610-15. Plaintiff now argues that she cannot perform any jobs listed by the VE because they require exposure to level four loud noise. Pl.'s Opening Br. 8. That specific evidence is not in the record, and this Court will not presume what the VE would testify to on remand. Accordingly, the record is not fully developed nor free of conflicts and ambiguities.

In light of the lack of a fully developed record, this Court will not credit the discounted testimony as true, and the appropriate remedy is to remand to the Commissioner for further proceedings. On remand, the ALJ must reformulate plaintiff's RFC and obtain additional VE testimony that accurately includes plaintiff's hearing limitations.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 11th day of December, 2023.

ANDREW HALLMAN
United States Magistrate Judge